**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ITAY GOLAN, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>KALSHIEX LLC, KALSHI INC., KALSHI KLEAR LLC, KALSHI KLEAR INC., and KALSHI TRADING LLC,<br><br>Defendants. | Case No. 1:26-cv-02394-ER |
| ADAM RISCH and YONATAN GLIKSMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>KALSHIEX LLC, KALSHI INC., KALSHI KLEAR LLC, KALSHI KLEAR INC., KALSHI TRADING LLC, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 1:26-cv-04734-ER |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

RELEVANT BACKGROUND ........ 2

A. Kalshi Operates a CFTC-Registered DCM ........ 2

B. Before Trading, Users Are Notified of, and Must Agree to, the Terms of the KalshiEX User Agreements ........ 3

C. The User Agreements Require Claims Against Kalshi To Be Resolved by Binding Arbitration ........ 5

D. Plaintiffs Agreed to Arbitrate ........ 6

E. The Underlying Dispute ........ 7

ARGUMENT ........ 8

I. LEGAL STANDARD ........ 8

II. PLAINTIFFS' CLAIMS ARE SUBJECT TO MANDATORY ARBITRATION ........ 10

A. Plaintiffs Entered into a Valid Agreement to Arbitrate Their Claims ........ 10

B. Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreement ........ 14

C. Equitable Estoppel Requires Arbitration of Plaintiffs' Claims Against All Defendants ........ 16

CONCLUSION ........ 18

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*,
307 F.3d 24 (2d Cir. 2002)....................9

*In re Am. Express Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011)....................8

*Astra Oil Co. v. Rover Navigation, Ltd.*,
344 F.3d 276 (2d Cir. 2003)....................17

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)....................9, 15

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................9

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022)....................10

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000)....................15

*Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*,
271 F.3d 403 (2d Cir. 2001)....................16

*Cohen v. CBR Sys., Inc.*,
625 F. Supp. 3d 997 (N.D. Cal. 2022)....................17

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995)....................14

*CompuCredit Corp. v. Greenwood*,
565 U.S. 95 (2012)....................9

*Cullors v. Cerebral, Inc.*,
No. 22-cv-9143, 2023 WL 5207471 (C.D. Cal. June 20, 2023)....................13

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (Lond.)*,
923 F.2d 245 (2d Cir. 1991)....................15

*Davitashvili v. Grubhub Inc.*,
131 F.4th 109 (2d Cir. 2025)....................10, 12

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................9

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) ....................10, 13

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) .................... *passim*

*Feld v. Postmates, Inc.*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020)....................12, 13, 14

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995)....................9

*Garcia v. Nabfly, Inc.*,
No. 23-cv-1162, 2024 WL 1795395 (S.D.N.Y. Apr. 24, 2024) ....................11

*Hastings v. Nifty Gateway, LLC*,
724 F. Supp. 3d 241 (S.D.N.Y. 2024)....................12

*Hu v. Whaleco, Inc.*,
779 F. Supp. 3d 265 (E.D.N.Y. 2024) ....................12, 13, 14

*Kern v. Stubhub, Inc.*,
No. 24-cv-871, 2024 WL 5283923 (S.D.N.Y. Dec. 17, 2024) ....................13

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011)....................8

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52 (1995)....................9

*McKinney v. Emery Air Freight Corp.*,
954 F.2d 590 (9th Cir. 1992) ....................15

*Mehler v. Terminix Int'l Co.*,
205 F.3d 44 (2d Cir. 2000)....................15

*Menowitz v. Brown*,
991 F.2d 36 (2d Cir. 1993)....................9

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)....................11

*Nicosia v. Amazon.com, Inc.*,
384 F. Supp. 3d 254 (E.D.N.Y. 2019) ....................12

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ....................8, 9, 10, 12

*Picha v. Gemini Tr. Co.*,
No. 22-cv-10922, 2024 WL 967182 (S.D.N.Y. Mar. 5, 2024)....................10

*Preston v. Ferrer*,
552 U.S. 346 (2008)....................16

*Ragone v. Atl. Video*,
595 F.3d 115 (2d Cir. 2010)....................16

*Shepherd v. Belkin Int'l, Inc.*,
683 F. Supp. 3d 282 (E.D.N.Y. 2023)....................17

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999)....................15

*STM Atl. N.V. v. Dong Yin Dev. Holdings Ltd.*,
No. 2:18-cv-01269, 2019 WL 2417625 (C.D. Cal. Feb. 15, 2019)....................16

*Thorne v. Square, Inc.*,
No. 20-cv-5119, 2022 WL 542383 (E.D.N.Y. Feb. 23, 2022)....................13

*Velasquez-Reyes v. Samsung Elecs. Am., Inc.*,
No. 16-cv-1953, 2020 WL 6528422 (C.D. Cal. Oct. 20, 2020)....................11

*Zachman v. Hudson Valley Fed. Credit Union*,
49 F.4th 95 (2d Cir. 2022)....................10

**Statutes**

7 U.S.C. § 2....................2

7 U.S.C. § 7....................2

9 U.S.C. § 2....................8

9 U.S.C. § 3....................8

9 U.S.C. § 4.................... *passim*

**Other Authorities**

17 C.F.R. pt. 38....................2

Defendants KalshiEX LLC, Kalshi Inc., Kalshi Klear LLC, Kalshi Klear Inc., and Kalshi Trading LLC (collectively, "Defendants" or "Kalshi") respectfully submit this memorandum of law in support of their motion to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 4.

## PRELIMINARY STATEMENT

KalshiEX LLC ("KalshiEX") operates a CFTC-registered designated contract market ("DCM") that offers participants the opportunity to trade event contracts, a type of swap. Plaintiffs traded event contracts on KalshiEX's DCM related to whether Ali Khamenei would leave office before a certain date (the "Khamenei Market"). After KalshiEX settled the Khamenei Market following Khamenei's death on February 28, 2026, Plaintiffs brought these putative class actions asserting claims for breach of contract, fraud, negligent misrepresentation, and violations of California's and New York's consumer-protection statutes, among others. Plaintiff Golan filed suit in this District, whereas Plaintiffs Risch and Gliksman filed in the United States District Court for the Central District of California.[1] On Defendants' motion, that court transferred *Risch*, and it was accepted as related to *Golan* on June 9, 2026. Pursuant to a stipulated schedule, Defendants agreed to file a single motion to compel arbitration addressing both actions.

In both cases, Plaintiffs ignore a fundamental and fatal problem—their binding agreement to arbitrate. Before accessing the KalshiEX Platform (defined below), every user—including Plaintiffs—must create an account and agree to be bound by user agreements that mandate that "any action" against Kalshi "will be resolved by binding arbitration." Plaintiffs had clear notice of this requirement and manifested their assent when they first created their accounts and each

[1] *Risch v. KalshiEX LLC*, No. 2:26-cv-02390-SB-MAA (C.D. Cal. filed Mar. 5, 2026).

time they logged in to trade. The arbitration clause is broad, the Federal Arbitration Act requires enforcement, and each of Plaintiffs' causes of action arises directly from their use of and trading activity on the KalshiEX Platform. The Court must compel arbitration under 9 U.S.C. § 4.

## RELEVANT BACKGROUND

### A. Kalshi Operates a CFTC-Registered DCM

As noted above, KalshiEX operates a CFTC-registered DCM which, like other DCMs such as the Chicago Mercantile Exchange, is an exchange for trading event contracts. In KalshiEX's case, those contracts are event contracts: Each has a yes (the event will occur) and a no (it will not) position, allowing customers to hedge and trade on financially significant events, with prices fluctuating based on market participants' perceptions of the likelihood the event will occur. *Risch* Compl. ¶ 24, Dkt. No. 1; *Golan* Compl. ¶ 45, Dkt. No. 1. KalshiEX offers event contracts on a wide variety of events, such as whether the seasonally adjusted unemployment rate reported by the Bureau of Labor Statistics will exceed a certain percentage, or whether the highest recorded temperature in a given city will exceed a specified thermometer reading according to the National Weather Service's Climatological Report.

As a federally regulated exchange, Kalshi is subject to the Commodity Exchange Act's ("CEA") comprehensive regulatory scheme. The CEA and CFTC regulations promulgated thereunder subject DCMs to ongoing oversight by the CFTC and require them to comply with twenty-three "Core Principles," including monitoring, recordkeeping, and reporting requirements aimed at protecting market integrity. *See* 7 U.S.C. § 7(d); 17 C.F.R. pt. 38. The CEA grants the CFTC "exclusive jurisdiction" over "transactions involving swaps" that are "traded or executed on a contract market designated" under the CEA, such as KalshiEX's DCM. 7 U.S.C. § 2(a)(1)(A).

Kalshi Inc. is the parent company of KalshiEX and the other Defendants, which are affiliates of one another. *Risch* Compl. ¶¶ 18-22.

### B. Before Trading, Users Are Notified of, and Must Agree to, the Terms of the KalshiEX User Agreements

Users can access KalshiEX through the web via Kalshi's website or through a mobile application available on certain smartphones (the "KalshiEX Platform"). Decl. of Xavier Sottile ("Decl.") ¶ 6. Before trading on the KalshiEX Platform, participants must create an account and agree to certain terms and conditions, including those contained in KalshiEX's Member Agreement ("Member Agreement") and KalshiEX's Rulebook ("Rulebook"), as well as its Privacy Policy, Trading Prohibitions, and the rulebook and participant agreement for Kalshi's designated clearing organization, Kalshi Klear LLC (collectively, the "User Agreements"). *Id.* ¶¶ 8-13.

As part of the registration process, each Kalshi user must first select whether they wish to sign up with Google, Apple, or email. *Id.* ¶ 10. Immediately below these options is the following notice: "By continuing, you acknowledge and agree to Kalshi's legal terms, **which we recommend reviewing**." *Id.* ¶ 11. The entire registration prompt is displayed clearly on one screen. *Id.* ¶ 12. The text of the notice links to a pop-up window containing links to each of the User Agreements. *Id.* ¶ 13.




Even after users have created a KalshiEX account, they are prompted to review and agree to the terms of the User Agreements each time they log into the KalshiEX Platform. *Id.* ¶ 22.



Participants cannot execute any trades on the KalshiEX Platform unless they are signed into their accounts. *Id.* ¶ 23. It is not possible to execute trades as a "guest." *Id.*

### C. The User Agreements Require Claims Against Kalshi To Be Resolved by Binding Arbitration

The Member Agreement notifies users of the obligation to arbitrate claims against KalshiEX. Section VII, titled "Member Acknowledgements," provides: "You will abide by and be subject to the Kalshi Rulebook, as now existing and as hereafter duly amended from time to time, **including the obligation to submit to arbitration**." Ex. 2 (Member Agreement) § VII.A (emphasis added). The "Governing Law" section of the Member Agreement further provides that "[t]his Agreement will be governed by the laws of the State of New York" and "[a]ny dispute between Kalshi and You arising from or in connection with this Agreement will be settled in accordance with the procedures set forth in the Kalshi Rulebook." *Id.* § XX. The Member Agreement also incorporates the Rulebook by reference, advises the user to review all documents incorporated by reference, and notifies the user that entering the KalshiEX Platform is the "legal equivalent of manually signing and agreeing to be bound by this agreement." Decl. ¶ 32 (capitalization altered); Ex. 2 at 1 (capitalization altered).

The Rulebook contains the terms and conditions pursuant to which a user may engage in trading. *See generally,* Ex. 1 (Rulebook). The Rulebook contains a hyperlinked table of contents at the front of the document, including a link to Rule 11.3, titled "Limitation of Liability." *Id.* at Rule 11.3. By clicking on the Rule 11.3 link, a user is immediately directed to several provisions governing the circumstances under which a user could bring an action against or recover from KalshiEX. Rule 11.3(d) states:

> EACH PARTICIPANT OF KALSHI AGREES THAT ANY ACTION IT BRINGS AGAINST A KALSHI PARTY . . . WILL BE RESOLVED BY BINDING ARBITRATION, IN ACCORDANCE WITH THE RULES OF THIS CHAPTER.

*Id.* at Rule 11.3(d).[2] Rule 11.3(c) separately provides that "EACH PARTICIPANT OF KALSHI AGREES THAT ANY ACTION IT BRINGS AGAINST A KALSHI PARTY WILL BE GOVERNED BY NEW YORK LAW." *Id.* at Rule 11.3(c). Other provisions of Rule 11.3 address limitations on damages and timing of recovery. *Id.*

### D. Plaintiffs Agreed to Arbitrate

Plaintiff Golan alleges that he is a citizen of New York who, at all relevant times, maintained an account on the KalshiEX Platform and traded on the Khamenei Market. *Golan* Compl. ¶ 13. Plaintiff Risch alleges that he is a citizen of California who, at all relevant times, maintained an account on the KalshiEX Platform and traded on the Khamenei Market. *Risch* Compl. ¶ 16. Plaintiff Gliksman likewise alleges that he is a citizen of California who, at all relevant times, maintained an account on the KalshiEX Platform and traded on the Khamenei Market. *Id.* ¶ 17. The registration and sign-in procedures for the KalshiEX Platform were as described *supra* § B at all relevant times including when Plaintiffs created their accounts and while the Khamenei Market was open. Decl. ¶ 9.

Each time they logged in, Plaintiffs were notified that, "[b]y continuing, you acknowledge and agree to Kalshi's legal terms, **which we recommend reviewing**." Decl. ¶ 11. KalshiEX's records indicate that, including account creation, Plaintiff Golan logged into his account no fewer than 4 times, Plaintiff Risch logged into his account no fewer than 16 times, and Plaintiff Gliksman logged into his account no fewer than 3 times. Decl. ¶ 22. Nevertheless, disregarding their obligation to arbitrate, Plaintiffs brought these actions, on behalf of themselves and putative classes, in federal court. *Golan* Compl. ¶¶ 1, 19-30; *Risch* Compl. ¶¶ 1, 54-60.

---

[2] "Kalshi Party" is defined as KalshiEX and "its officers, directors, agents, employees, and/or software, hardware, and service providers." Ex. 1 at Rule 11.3(a) (capitalization altered).

### E. The Underlying Dispute

On or about January 8, 2026, Defendants opened the Khamenei Market. *Risch* Compl. ¶ 29. The Market was titled "Ali Khamenei out as Supreme Leader?" and allowed users to trade binary contracts on whether Ayatollah Ali Khamenei would cease to hold the position of Supreme Leader of Iran before specified dates, including March 1, 2026 and April 1, 2026. *Id.*; *see Golan* Compl. ¶¶ 44-45. Plaintiffs allege that the "rules summary" for the contracts stated the following: "if Ali Khamenei leaves office before [the specified date], then the market resolves to yes." *Risch* Compl. ¶ 30; *see Golan* Compl. ¶ 46.

Plaintiff Golan allegedly purchased 1,436 "yes" contracts on the "[B]efore April 1, 2026" contract. *Golan* Compl. ¶ 48. On February 18, 2026, Plaintiff Risch allegedly purchased 255 "yes" contracts on the "Before April 1, 2026" contract and 329 "yes" contracts on the "Before March 1, 2026" contract. *Risch* Compl. ¶ 31. On February 28, 2026, Risch allegedly purchased 781 "yes" contracts on the "Before March 1, 2026" contract. *Id.* Plaintiff Gliksman allegedly purchased 1,451 "yes" contracts on the "Before March 1, 2026" contract. *Id.* ¶ 32. That same day, the United States and Israel launched military strikes against Iran, and U.S. and Iranian authorities subsequently confirmed Khamenei's death. *Id.* ¶ 35. Plaintiffs Risch and Gliksman executed trades throughout the day—at 11:47 a.m., 12:23 p.m., and 2:51 p.m. ET—after information about the military strikes was shared on social media and by news outlets but before Khamenei's death was confirmed. *Id.* ¶ 40. At approximately 2:59 p.m. ET, Kalshi paused trading on the Khamenei Market. *Id.* ¶ 37. At approximately 10:06 p.m. ET, Kalshi closed the Market and, pursuant to the contract terms, settled the contracts based on a "last traded price" rather than resolving to "yes." *Id.* ¶ 38.

The *Golan* Complaint asserts eight causes of action: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) fraudulent inducement, fraud by omission, and

intentional misrepresentation; (4) fraudulent concealment / fraud by omission; (5) negligent misrepresentation; (6) violation of New York General Business Law § 349; (7) unjust enrichment; and (8) declaratory judgment. *Golan* Compl. ¶¶ 68-116. The *Risch* Complaint asserts seven causes of action: (1) breach of contract; (2) fraud and intentional misrepresentation; (3) negligent misrepresentation; (4) violation of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); (5) violation of California's Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750 *et seq.*); (6) unjust enrichment; and (7) violation of California Penal Code § 496(c). *Risch* Compl. ¶¶ 61-98. All causes of action in the *Golan* and *Risch* Complaints arise from Plaintiffs' use of the KalshiEX Platform and their trading on the Khamenei Market.

## ARGUMENT

### I. LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to any written arbitration agreement in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Section 3 requires a stay of litigation involving arbitrable issues, and Section 4 authorizes an order compelling arbitration. *Id.* §§ 3-4. "Agreements to arbitrate that fall within the scope and coverage of the Federal Arbitration Act . . . must be enforced in state and federal courts." *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011) (per curiam).[3] When "deciding whether claims are subject to arbitration," courts "consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011); *see Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 510 (9th Cir. 2023). Where both elements are met, courts must compel

[3] Unless otherwise indicated, all citations have been "cleaned up."

arbitration. *See, e.g.*, *ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 34-36 (2d Cir. 2002) (Sotomayor, J.); *Oberstein*, 60 F.4th at 509–10.

The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344-46 (2011). Courts must "enforce [arbitration] agreements . . . according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012). The FAA creates "a presumption of arbitrability" and all "[d]oubts should be resolved in favor of [arbitration]." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Where a valid arbitration clause exists, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Although the FAA supplies the enforcement framework, courts apply "ordinary state-law principles" to determine "whether the parties agreed to arbitrate a certain matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). State law therefore supplies the contract-law rules for assessing formation, interpretation, scope, and applicable defenses, while the FAA mandates enforcement of the resulting arbitration agreement. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 58-64 (1995) (a generic New York choice-of-law clause selects substantive contract law but does not displace the FAA's enforcement framework).

As noted above, *Risch* was transferred to this Court from the United States District Court for the Central District of California; Golan was filed directly in this District. A transferee court applies the choice-of-law rules of the transferor court to claims transferred to it, so California's choice-of-law rules could, in theory, govern the *Risch* action. *See Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (per curiam) (transferee court applies the transferor court's "choice-of-law rules"). The Court need not resolve that question, however, because California and New York

apply materially indistinguishable standards for determining whether a party manifested assent to an online arbitration agreement, *see infra* § II.A, such that no actual conflict of law exists.

Once a moving party shows the existence of an agreement to arbitrate, "the burden shifts to the party seeking to avoid arbitration to 'show the agreement to be inapplicable or invalid.' " *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 102 (2d Cir. 2022).

## II. PLAINTIFFS' CLAIMS ARE SUBJECT TO MANDATORY ARBITRATION

The FAA requires arbitration because Plaintiffs assented to the User Agreements governing access to the KalshiEX Platform, and the claims asserted in both complaints fall within the scope of the resulting arbitration agreement.

### A. Plaintiffs Entered into a Valid Agreement to Arbitrate Their Claims

A valid agreement to arbitrate exists under New York and California law. *See Oberstein*, 60 F.4th at 514 (tests used by California and New York courts to determine validity of online terms-of-use agreement are "materially indistinguishable"); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (applying Second Circuit precedent to determine whether a valid agreement to arbitrate exists). Under both New York and California law, determining whether an online terms-of-use agreement, like the User Agreements, creates a valid agreement turns on whether "(1) a reasonably prudent person would be on inquiry notice of the terms, and (2) the user unambiguously manifests assent through conduct that a reasonable person would understand to constitute assent." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023) (emphasis omitted); *see also Berman*, 30 F.4th at 856. Even where the non-moving party denies actual notice of the terms of a contract, a person is on "inquiry notice" of the terms of an online agreement if the reasonably prudent user would have been on notice of the terms. *Picha v. Gemini Tr. Co.*, No. 22-cv-10922, 2024 WL 967182, at *8 (S.D.N.Y. Mar. 5, 2024); *see also Davitashvili v. Grubhub Inc.,* 131 F.4th 109, 115-16 (2d Cir. 2025); *Dohrmann v. Intuit, Inc.,* 823 F. App'x

482, 483 (9th Cir. 2020) ("[A]n offeree is bound by an arbitration clause if a reasonably prudent Internet consumer would be put on inquiry notice of the agreement's existence and contents."). "While it may be the case that many users will not bother reading the additional terms, that is the choice the user makes; the user is still on inquiry notice." *Garcia v. Nabfly, Inc.*, No. 23-cv-1162, 2024 WL 1795395, at *8 (S.D.N.Y. Apr. 24, 2024); *see Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. 16-cv-1953, 2020 WL 6528422, at *4 (C.D. Cal. Oct. 20, 2020) ("Choosing not to read the terms and conditions does not negate inquiry notice.").

In the context of an online terms-of-use agreement, "reasonably prudent" is an objective standard that presumes the plaintiff has "some familiarity with how to navigate to a website or download an app." *Edmundson*, 85 F.4th at 704; *see id.* ("[S]uch a user is not a complete stranger to computers or smartphones."). Where the internet or smartphone user does not explicitly say "I agree" to the contractual terms, the Court may consider the "design and content of the relevant interface," including "(1) whether the interface clearly warned the user that taking a specific action would constitute assent to certain terms; (2) whether notice of the contractual terms was presented to the consumer in a location on the interface and at time when the consumer would expect to receive such terms; and (3) the course of dealing between the parties, including whether the contract terms were conspicuously presented to the consumer at each use of the offeror's service and the consumer's conduct in response to the repeated presentation of conspicuous terms." *Id.* at 704-05.

Contract terms are conspicuous when they "are linked on an 'uncluttered' interface and temporally and 'spatially coupled with the mechanism for manifesting assent,' " where the user "does not need to scroll beyond what is immediately visible to find the terms." *Id.* at 704; *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74-75 (2d Cir. 2017). Courts routinely find that a "sign-

in-wrap," which is where a website interface is "designed so that a user is notified of the existence and applicability of the site's 'terms of use' when proceeding through the website's sign-in or login process," is sufficient to put a user on inquiry notice of an arbitration provision contained in such terms. *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 829 (S.D.N.Y. 2020); *see Hastings v. Nifty Gateway, LLC*, 724 F. Supp. 3d 241, 248-49 (S.D.N.Y. 2024) (enforcing arbitration agreement where website's sign-up page stated that "by signing up, you agree to the Terms and Conditions and Privacy Policy"); *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 269-70 (E.D.N.Y. 2019) (hyperlink under sign-up button containing terms and conditions document bound users to arbitration clause). Similarly, the Second Circuit has upheld arbitration provisions where the link is placed near a "checkout" or "continue" button that the user must click to proceed with their transaction on the website. *See, e.g.*, *Davitashvili*, 131 F.4th at 115-17; *Oberstein*, 60 F.4th at 515-16.

Applying those principles, courts routinely enforce online agreements where users are presented with notice that proceeding constitutes assent and are provided with a readily accessible hyperlink to the governing terms. *See Edmundson*, 85 F.4th at 699; *Hu v. Whaleco, Inc.*, 779 F. Supp. 3d 265, 274, 289-91 (E.D.N.Y. 2024) (holding that users of an online shopping mobile application were on inquiry notice of the terms and conditions on the application's registration screen based on hyperlinks and text reading "[b]y continuing, you agree to our **Terms of Use** and **Privacy & Cookie Policy**.").

Here, KalshiEX's sign-up screen satisfies the reasonable notice standard. As in *Edmundson* and *Hu*, Kalshi's account creation and sign-in screens are uncluttered. *See* Decl. ¶¶ 12, 21. The notice that account creation requires assent to Kalshi's terms, and the hyperlink to the User Agreements, are visible on the same page as the "continue" button, which the user must select

in order to proceed with creating an account. *See id.* ¶¶ 14-17. Because Kalshi users cannot register for, or sign into, an account without encountering the terms, the notice and hyperlink are "temporally coupled." *See, e.g.*, *Edmundson*, 85 F.4th at 705-07; *Hu*, 779 F. Supp. 3d at 285-88; *Cullors v. Cerebral, Inc.*, No. 22-cv-9143, 2023 WL 5207471, at *4 (C.D. Cal. June 20, 2023) (notice in the "immediate vicinity" of the action button sufficient), *aff'd*, No. 23-55594, 2024 WL 3385530 (9th Cir. July 12, 2024). Similarly, users are reminded of, and re-assent to, Kalshi's legal terms each time they sign into the KalshiEX Platform, and the notice and hyperlink to the User Agreements are similarly visible on a single page. *See* Decl. ¶ 21.

By accepting the User Agreements, Plaintiffs unambiguously manifested their assent to arbitration. Courts regularly hold that a user who "signs in" or "clicks through," where the notice of terms and conditions conspicuously appears on the page, has manifested their assent when they choose to continue. *See, e.g.*, *Feld*, 442 F. Supp. 3d at 832 (users manifested assent when the "physical proximity of the [hyperlinked agreement] to the register button and the placement of the language in the registration flow make clear to the user that the linked terms pertain to the action the user is about to take"); *Thorne v. Square, Inc.*, No. 20-cv-5119, 2022 WL 542383, at *5, *11-12 (E.D.N.Y. Feb. 23, 2022) (users unambiguously manifested assent to the hyperlinked terms by the "Continue" button when they were on inquiry notice and pressed "Continue"); *Kern v. Stubhub, Inc.*, No. 24-cv-871, 2024 WL 5283923, at *2 (S.D.N.Y. Dec. 17, 2024) (inquiry notice in combination with some action "such as clicking a button or checking a box" manifests consent to the hyperlinked terms of sign-wrap agreements); *see also Dohrmann*, 823 F. App'x at 484 (similar).[4]

---

[4] Users typically expect to receive notice of terms and conditions and hyperlinks on the "initial registration screen." *Hu*, 779 F. Supp. 3d at 294. Downloading an app or signing up for a

The Court's decision in *Feld* is instructive. There, the Court found that users manifested consent to the terms of service—including the arbitration provision therein—where the link to those conditions appeared below the email and password fields and above the "Sign Up" and sign-up with "Facebook" buttons. 442 F. Supp. 3d at 831-32. Like in *Feld*, when Plaintiffs created an account on the KalshiEX Platform, and each time they signed in thereafter, they were provided notice that "[b]y continuing, you acknowledge and agree to Kalshi's legal terms, **which we recommend reviewing**" and provided the opportunity to review the terms. Decl. ¶¶ 11, 21. And, as in *Feld*, the sign-in button is near the hyperlinked text. *Id.* ¶ 21. In other words, the terms and conditions are presented in a location and time at which Plaintiffs would have expected to receive such terms. *See, e.g.*, *Edmundson*, 85 F.4th at 707-08; *Hu*, 779 F. Supp. 3d at 294. Accordingly, Plaintiffs manifested consent to the User Agreements, including the Rulebook and its mandatory arbitration provision, when they registered for the KalshiEX Platform.

**B. Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreement**

When Plaintiffs created an account and traded through the KalshiEX Platform, they agreed:

> EACH PARTICIPANT OF KALSHI AGREES THAT ANY ACTION IT BRINGS AGAINST A KALSHI PARTY OR AGAINST ANOTHER KALSHI MEMBER WILL BE RESOLVED BY BINDING ARBITRATION, IN ACCORDANCE WITH THE RULES OF THIS CHAPTER AND OTHER RULES OF KALSHI, IF APPLICABLE.

Ex. 1 at Rule 11.3(d). That "is the paradigm of a broad clause," giving rise to "a presumption that [a plaintiff's] claims are arbitrable." *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995); *see id.* (analyzing a clause "submitting to arbitration 'any claim or controversy arising out of or relating to the agreement' "). The Second Circuit routinely enforces similar

---

website clearly contemplates some sort of "continuing relationship between the putative user and the defendant, one that would require some terms and conditions." *Id.* at 294-95.

provisions, such as ones requiring arbitration of "any controversy or claim between the parties arising out of or relating to the Agreement," *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 49 (2d Cir. 2000), and of "all disputes arising out of or in relation to" a contract, *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (Lond.)*, 923 F.2d 245, 251 (2d Cir. 1991); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (clause covering "[a]ny dispute, controversy or claim arising out of or relating to" the agreement was "broad and far reaching"); *McKinney v. Emery Air Freight Corp.*, 954 F.2d 590, 593 (9th Cir. 1992) (enforcing clause requiring arbitration of "any grievance or controversy affecting the mutual relations of the parties").

Where arbitration clauses are broad like the one at issue here, "in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Techs.*, 475 U.S. at 650. Plaintiffs cannot come close to providing such "forceful evidence." Each cause of action is based on Plaintiffs' participation in the Khamenei Market through the KalshiEX Platform and therefore arises from the parties' contractual relationship. Plaintiffs cannot avoid arbitration by relabeling a platform dispute as a tort or statutory violation. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (broad arbitration clauses encompass tort and statutory claims that are factually rooted in the parties' contractual relationship). Because all of Plaintiffs' claims arise from their contractual relationship with KalshiEX and their trading activity on the KalshiEX Platform, they fall squarely within the Rulebook's broad arbitration clause.

The nature of Plaintiffs' claims—whether characterized as breach of contract, fraud, or statutory violations—does not affect the arbitrability analysis. "[W]hen parties agree to arbitrate all disputes arising under their contract, questions concerning the validity of the entire contract are

to be resolved by the arbitrator in the first instance, not by a federal or state court." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). Here, the arbitration clause covers "any action" against Kalshi—not merely contract claims—and Plaintiffs' fraud and statutory claims are inextricably intertwined with their contractual relationship. Accordingly, this Court must enter an order directing the parties to arbitrate. 9 U.S.C. § 4.

### C. Equitable Estoppel Requires Arbitration of Plaintiffs' Claims Against All Defendants

The Rulebook's arbitration clause expressly covers claims against "KalshiEX." Ex. 1 at Rule 11.3(a). Plaintiffs have also named as defendants Kalshi Inc., Kalshi Klear LLC, Kalshi Klear Inc., and Kalshi Trading LLC—all corporate affiliates of KalshiEX that share a common parent. Under the doctrine of equitable estoppel, Plaintiffs are bound to arbitrate their claims against these non-signatory affiliates as well. Courts require arbitration of claims against non-signatories to an arbitration agreement where (1) claims against the non-signatories are "intertwined with the agreement," *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.,* 271 F.3d 403, 406-07 (2d Cir. 2001); and (2) there is a "relationship among the parties of a nature that justifies" estopping a plaintiff from "denying an obligation to arbitrate a similar dispute" with a non-signatory, *Ragone v. Atl. Video*, 595 F.3d 115, 127 (2d Cir. 2010). Courts applying California law have similarly required arbitration against non-signatories where the claims arise from conduct intertwined with the underlying agreement. *See STM Atl. N.V. v. Dong Yin Dev. Holdings Ltd.*, No. 2:18-cv-01269, 2019 WL 2417625, at *5 (C.D. Cal. Feb. 15, 2019) (finding that equitable estoppel applied because plaintiffs' claims were not incidental to the arbitration-mandating Shareholder Agreement and their injuries occurred from events caused by the Agreement). Both elements are satisfied here.

*First,* the claims against all Defendants are ***identical*** to those against KalshiEX and based exclusively on Plaintiffs' use of the KalshiEX Platform. *See Shepherd v. Belkin Int'l, Inc.*, 683 F. Supp. 3d 282, 288-89 (E.D.N.Y. 2023). In *Shepherd,* the court required plaintiff to arbitrate its claims against a non-signatory where plaintiff brought identical claims against two defendants and treated both defendants as having made identical misrepresentations, even though the arbitration clause at issue did not expressly reference the non-signatory. *Id.* Here, Plaintiffs bring the same causes of action against all defendants. *See Golan* Compl. ¶¶ 68-116; *Risch* Compl. ¶¶ 61-98. The claims "do[ ] not distinguish in any way between" Defendants. *Shepherd*, 683 F. Supp. 3d at 288-89. Plaintiffs refer to all defendant entities collectively as "Kalshi" or "Defendants," without distinguishing between corporate entities, and allege that all Defendants acted in concert and made misrepresentations collectively. *See, e.g.*, *Golan* Compl. ¶¶ 46, 54-60; *Risch* Compl. ¶¶ 3-12.

*Second*, although all Defendants are corporate affiliates of one another, Plaintiffs do not distinguish between Defendants; rather, they plead that Defendants collectively operated, marketed, and settled a Kalshi prediction market titled "Ali Khamenei out as Supreme Leader?" *Golan* Compl. ¶ 1; *Risch* Compl. ¶ 3. Courts ordinarily find the relationship between "corporate affiliates, subsidiaries, agents, or other related business entities" to be "of a nature" that justifies compelling arbitration against an affiliate. *Shepherd*, 683 F. Supp. 3d at 287. The relationship between KalshiEX and the other Defendants reinforces that Plaintiffs should be estopped from denying an obligation to arbitrate a similar dispute with adversaries that are not party to the User Agreements. *See Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276, 279-82 (2d Cir. 2003) (Sotomayor, J.) (estopping respondent from avoiding arbitration with corporate affiliate of signatory); *see also Cohen v. CBR Sys., Inc.*, 625 F. Supp. 3d 997, 1006-07 (N.D. Cal. 2022) (estopping plaintiffs from avoiding arbitration with corporate parent of signatory).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court compel arbitration under the FAA, 9 U.S.C. § 4.

Dated: July 15, 2026
New York, New York

Respectfully submitted,

*/s/* Tawfiq S. Rangwala
Tawfiq S. Rangwala
Katherine Kelly Fell
Matthew J. Laroche
Andrew L. Porter
Sean M. Murphy
Ashley A. Satterlee
MILBANK LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
trangwala@milbank.com
kfell@milbank.com
mlaroche@milbank.com
aporter@milbank.com
smurphy@milbank.com
asatterlee@milbank.com

Joshua B. Sterling (pro hac vice)
MILBANK LLP
1101 New York Avenue NW
Washington, D.C. 20005
Telephone: (202) 835-7500
Facsimile: (202) 263-7586
jsterling@milbank.com

*Counsel for Defendants KalshiEX LLC, Kalshi Inc., Kalshi Klear LLC, Kalshi Klear Inc., and Kalshi Trading LLC*