**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ITAY GOLAN, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>KALSHIEX LLC, KALSHI INC., KALSHI KLEAR LLC, KALSHI KLEAR INC., and KALSHI TRADING LLC,<br><br>Defendants. | Case No. 1:26-cv-02394-ER |
| ADAM RISCH and YONATAN GLIKSMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>KALSHIEX LLC, KALSHI INC., KALSHI KLEAR LLC, KALSHI KLEAR INC., KALSHI TRADING LLC, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 1:26-cv-04734-ER |

# **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ........ - 1 -

ARGUMENT ........ - 1 -

I. PLAINTIFFS AGREED TO ARBITRATE ........ - 1 -

A. Plaintiffs' Own Mobile Evidence Confirms Notice and Assent ........ - 2 -

B. The Notice Sentence Is Reasonably Conspicuous and Expressly Connected to the User's Action ........ - 3 -

C. Plaintiffs' Evidentiary Objections Do Not Create a Triable Dispute ........ - 6 -

II. THE ARBITRATION CLAUSE COVERS PLAINTIFFS' CLAIMS ........ - 7 -

A. Plaintiffs' Claims Fall Within Rule 11.3(d)'s Broad Text ........ - 7 -

B. Chapter 10 Does Not Make Rule 11.3(d)'s Arbitration Obligation Elective ........ - 8 -

C. Federal Commodities Law Does Not Prohibit the Parties' Arbitration Agreement ........ - 10 -

III. PLAINTIFFS' REMAINING ENFORCEABILITY OBJECTIONS FAIL ........ - 10 -

A. Plaintiffs Attack a Chapter 10 Forum That Does Not Govern Actions Against Kalshi ........ - 10 -

B. Kalshi's Notice-Based Amendment Authority Does Not Render the Agreement Illusory ........ - 12 -

IV. EQUITABLE ESTOPPEL REQUIRES ARBITRATION OF CLAIMS AGAINST ALL DEFENDANTS ........ - 13 -

A. Plaintiffs' Direct-Scope Arguments Do Not Defeat Equitable Estoppel ........ - 13 -

B. Plaintiffs' Own Allegations Establish the Required Interdependence ........ - 13 -

C. The DCO Rulebook's Venue Provision Does Not Preclude Arbitration ........ - 14 -

CONCLUSION ........ - 15 -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Astra Oil Co. v. Rover Navigation, Ltd.*,
344 F.3d 276 (2d Cir. 2003)....................14

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)....................8

*Badinelli v. Tuxedo Club*,
183 F. Supp. 3d 450 (S.D.N.Y. 2016)....................9

*Bank Julius Baer & Co. v. Waxfield Ltd.*,
424 F.3d 278 (2d Cir. 2005)....................15

*Bassett v. Elec. Arts, Inc.*,
93 F. Supp. 3d 95 (E.D.N.Y. 2015)....................12, 13

*Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*,
271 F.3d 403 (2d Cir. 2001)....................13

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995)....................8

*Davitashvili v. Grubhub Inc.*,
131 F.4th 109 (2d Cir. 2025)....................8

*Dawson v. Target Corp.*,
2025 WL 1651940 (N.D. Cal. June 11, 2025)....................6

*Doe v. Trump Corp.*,
453 F. Supp. 3d 634 (S.D.N.Y. 2020)....................13

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023)....................3, 4

*Flores v. New York Football Giants, Inc.*,
150 F.4th 172 (2d Cir. 2025)....................11

*Flores v. NFL*,
658 F. Supp. 3d 198 (S.D.N.Y. 2023)....................12

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)....................4

*Goldman v. KPMG LLP*,
173 Cal. App. 4th 209 (2009)....................14

*Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*,
764 F.3d 210 (2d Cir. 2014)....................15

*Hu v. Whaleco, Inc.*,
779 F. Supp. 3d 265 (E.D.N.Y. 2024)....................4

*Knipe v. Skinner*,
999 F.2d 708 (2d Cir. 1993)....................6

*Lebowitz v. Dow Jones & Co.*,
508 F. App'x 83 (2d Cir. 2013)....................12

*Leist v. Simplot*,
638 F.2d 283 (2d Cir. 1980)....................10

*Marciano v. DCH Auto Grp.*,
14 F. Supp. 3d 322 (S.D.N.Y. 2014)....................12

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
456 U.S. 353 (1982)....................10

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)....................5

*Moss v. First Premier Bank*,
835 F.3d 260 (2d Cir. 2016)....................9, 10

*Peleg v. Neiman Marcus Grp., Inc.*,
204 Cal. App. 4th 1425 (2012)....................12

*Phillips v. Audio Active Ltd.*,
494 F.3d 378 (2d Cir. 2007)....................8

*Presson v. Alamo Intermediate II Holdings, LLC*,
2025 WL 692123 (S.D.N.Y. Mar. 4, 2025)....................1, 2, 4

*Ragone v. Atl. Video*,
595 F.3d 115 (2d Cir. 2010)....................13

*Res. Grp. Int'l Ltd. v. Chishti*,
91 F.4th 107 (2d Cir. 2024)....................15

*Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*,
687 F. Supp. 2d 381 (S.D.N.Y. 2010)....................6

*In re Salomon Inc. S'holders' Derivative Litig.*,
68 F.3d 554 (2d Cir. 1995)....................9, 10

*Segui v. Solar Mosaic LLC*,
2026 WL 1724022 (S.D.N.Y. June 15, 2026)....................5, 7

*Segui v. Solar Mosaic LLC*,
802 F. Supp. 3d 545 (S.D.N.Y. 2025)....................1, 5

*Shalomayev v. Altice USA, Inc.*,
2022 WL 2359406 (E.D.N.Y. June 30, 2022)....................5

*Shepherd v. Belkin Int'l, Inc.*,
683 F. Supp. 3d 282 (E.D.N.Y. 2023)....................13

*Snow v. Eventbrite, Inc.*,
2020 WL 6135990 (N.D. Cal. Oct. 19, 2020)....................3

*Thorne v. Square, Inc.*
2022 WL 542383 (E.D.N.Y. Feb. 23, 2022)....................6

*Velasquez-Reyes v. Samsung Elecs. Am., Inc.*,
2020 WL 6528422 (C.D. Cal. Oct. 20, 2020)....................5

*WeWork Cos. v. Zoumer*,
2016 WL 1337280 (S.D.N.Y. Apr. 5, 2016)....................9

**Statutes**

7 U.S.C. § 7a-2(c)....................5

9 U.S.C. § 4....................7

**Other Authorities**

17 C.F.R. § 38.150....................5

17 C.F.R. § 38.750....................10

## PRELIMINARY STATEMENT

Plaintiffs' Opposition ("Opp.")[1] confirms the facts that compel arbitration. Their own declarants recorded the mobile sign-up screen displaying the Notice Sentence[2] beneath the enrollment buttons, and no Plaintiff denies encountering it. The screen expressly advised: "By continuing, you acknowledge and agree to Kalshi's legal terms, which we recommend reviewing." Plaintiffs admit that each created an account by continuing through that flow.

This Court's decisions in *Presson v. Alamo Intermediate II Holdings, LLC*, 2025 WL 692123 (S.D.N.Y. Mar. 4, 2025), and *Segui v. Solar Mosaic LLC*, 802 F. Supp. 3d 545 (S.D.N.Y. 2025), reinforce, rather than undermine, Plaintiffs' agreement to arbitrate their claims. *Presson* denied enforcement where assent was tied to a pre-checked rewards program box, rather than the button clicked by the user. *Segui* involved evidence that the plaintiff never signed or was shown the disputed contracts. Plaintiffs here created accounts through an interface displaying an assent sentence tied to continuing.

The remaining objections fare no better: Rule 11.3(d) requires binding arbitration of "ANY ACTION" against a Kalshi Party; Chapter 10's elective mechanism governs participant-to-participant claims, not actions against Kalshi; and any procedural gap is supplied by the FAA. Plaintiffs cannot allege that every Defendant jointly operated and settled the challenged positions while denying that their claims are intertwined with the agreements governing the same positions. The Court should compel arbitration and stay these proceedings.

## ARGUMENT

### I. PLAINTIFFS AGREED TO ARBITRATE

The parties agree that both New York and California law ask whether the interface

---

[1] Capitalized terms not defined herein have the same meaning as in Defendants' Memorandum of Law in Support of Motion to Compel Arbitration, Dkt. 63 ("Mot." or "Motion"). Dkt. citations refer to the *Risch* docket (No. 26-cv-04734-ER (S.D.N.Y.)).

[2] "Notice Sentence" has the same meaning ascribed to it in Plaintiffs' Opp. *See* Opp. at 5.

provided reasonably conspicuous notice of the terms and whether the user unambiguously manifested assent through conduct identified as agreement. Opp. at 9-10; Mot. at 10-14. Because Kalshi's interface satisfies that standard under either state's law, the Court need not resolve any asserted choice-of-law difference.

### A. Plaintiffs' Own Mobile Evidence Confirms Notice and Assent

Plaintiffs' lead argument is that Kalshi's mobile sign-up and login screens failed to provide sufficient notice. Plaintiffs' own exhibits show the registration-screen features described in the Motion. *See* Dkts. 72-2, 72-4, 74-1. The Notice Sentence appears on a single, uncluttered registration screen directly beneath the sign-up buttons. *See* Dkts. 72, 72-2, 72-4. The sentence ends with an arrow, and the entire sentence, when tapped, immediately opens a drawer identifying the "Member Agreement" and "Rulebook." Dkts. 72 ¶ 7; 72-3. Plaintiffs thus supplied the evidence they say is missing: the screen expressly couples continuing with assent and provides immediate access to the identified legal documents.

Nor can Plaintiffs credibly assert that users had no idea they were assenting to a contract (Opp. at 11-13), when their own evidence displays: "By continuing, you acknowledge and agree to Kalshi's legal terms, which we recommend reviewing." Dkts. 72 ¶ 7, 72-2. Plaintiffs' declarations do not deny that the sentence appeared. Each says only that he does not recall seeing or reading it, while describing the remainder of the same registration screen. *See* Dkts. 69 ¶¶ 8-11, 70 ¶¶ 8-11, 71 ¶¶ 8-11. That subjective failure of recollection does not contradict objective evidence of what the interface displayed. Inquiry notice turns on what a reasonably prudent user would perceive, not what a particular user later remembers reading.

Plaintiffs' reliance on Kalshi's prior "I ACCEPT" language (Opp. at 20-21) confuses one permissible method of assent with another. *Presson* itself asks whether the interface clearly warned that the action the user took would constitute assent; it does not require an "I agree" button. 2025 WL 692123, at *5. Kalshi's notice states that "[b]y continuing" the user

"acknowledge[s] and agree[s]" to Kalshi's legal terms, immediately before the user continues through registration. Dkts. 64 ¶ 11, 72-2. The change from an "I ACCEPT" formulation therefore reflects a different assent mechanism, not abandonment of assent.

Plaintiffs dismiss (Opp. at 7) the Sottile Declaration's statement that the mobile and desktop interfaces are "the same in all relevant parts" (Dkt. 64 ¶ 14) as "conclusory," but their own evidence corroborates the material features: the same Notice Sentence and access point to the User Agreements. *Compare* Novian Decl. (Dkt. 72) & Ex. B and D (Dkts. 72-2, 72-4), *with* Sottile Decl. (Dkt. 64) ¶¶ 10-14. The screens need not be visually identical. The material questions are whether the mobile screen displayed the assent sentence without scrolling, connected continuing with agreement to the terms, and provided access to the documents. Plaintiffs' own evidence answers each question yes.

*Snow v. Eventbrite, Inc.*, 2020 WL 6135990 (N.D. Cal. Oct. 19, 2020), is different from the instant case. There, the movant's evidence was undated, internally contradictory, and failed to establish what the interface looked like when each plaintiff used the platform. *Id.* at *4-6. Here, the Sottile Declaration affirms that the relevant procedures were in force since Plaintiffs registered, and Plaintiffs' mobile images corroborate the notice language, placement, and functioning access point. *See* Dkts. 64 ¶ 9, 72 ¶ 7, 72-2, 72-4.

**B. The Notice Sentence Is Reasonably Conspicuous and Expressly Connected to the User's Action**

Plaintiffs' conspicuousness arguments (Opp. at 14-19) apply a prominence test the law does not require. The question is not whether the Notice Sentence was the largest or most prominent text on the screen, but whether "a reasonably prudent person would be on inquiry notice of the terms." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023) (cleaned up). *Edmundson* does not mandate any particular font color, size, or styling—it requires consideration of the "design and content of the relevant interface" as a whole. *Id.* at 704. Here, the interface "clearly warned" users that "taking a specific action would constitute assent" by

stating "[b]y continuing, you acknowledge and agree." *Id.*; Opp. at 5. The notice was "presented to the consumer in a location on the interface and at time when the consumer would expect to receive such terms" on the registration and login screens, before the user could proceed. 85 F.4th at 704-05; *see also Hu v. Whaleco, Inc.*, 779 F. Supp. 3d 265, 274, 289-93 (E.D.N.Y. 2024) (enforcing "[b]y continuing, you agree" language on a registration screen). The sentence also directed the user to "legal terms"; its language, location, and timing objectively communicated both the existence of contractual terms and the conduct constituting assent.

Plaintiffs' focus on the arrow improperly isolates it from the sentence it completes. The access point is not a freestanding glyph appearing without context. It immediately follows a sentence identifying "Kalshi's legal terms" and recommending that users review them. And there is no factual dispute about where it leads. Plaintiffs' own evidence shows that tapping the arrow immediately opens a drawer titled "Legal stuff" that lists the "Member Agreement" and "Rulebook." *See* Dkts. 72 ¶ 7, 72-3. Their evidence thus establishes both the access point and its destination.

Plaintiffs' reliance on *Presson* confirms, rather than undermines, the dispositive distinction. *Presson* denied enforcement where assent was tied to an optional, pre-checked rewards program box. 2025 WL 692123, at *5. The "Buy Tickets" button pressed by the user there was "in no way connected to the linked Terms." *Id.* Here, by contrast, the Notice Sentence expressly identifies the very conduct Kalshi relies upon: "By continuing, you acknowledge and agree to Kalshi's legal terms." Dkts. 64 ¶ 11, 72-2. Plaintiffs could not create their accounts without continuing through one of the registration controls immediately above that notice. *Presson* contrasted the deficient Alamo screen with *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012), where a notice beneath the "Sign Up" button advised that clicking it constituted agreement. *Id.* Kalshi's notice uses the same operative structure: before users

proceed, it tells them that "[b]y continuing" they "acknowledge and agree" to the identified legal terms. Dkts. 64 ¶ 11, 72-2.

*Segui* involved a fundamentally different formation dispute. The plaintiff testified that a salesperson created an email address for her, that she signed a tablet only to permit roof access, and that she never signed the financing contracts presented by the defendant. 802 F. Supp. 3d at 555, 563-64; *Segui v. Solar Mosaic LLC*, 2026 WL 1724022, at *1-4 (S.D.N.Y. June 15, 2026). The Court therefore confronted competing evidence about whether the plaintiff executed any contract at all, including allegations of fraud in the execution. Plaintiffs here admit that they created accounts and selected a registration path. And the objective mobile evidence shows the assent sentence on the same screen as that voluntary act. *See* Dkts. 64 ¶¶ 10-14, 72 ¶ 7, 72-2.

Furthermore, the law requires inquiry notice, not proof that a user read the linked documents. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 79 (2d Cir. 2017); *see Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, 2020 WL 6528422, at *4 (C.D. Cal. Oct. 20, 2020). Plaintiffs' decision not to click the link does not establish that Kalshi failed to provide notice or access.

This analysis does not change just because the arbitration provision appears in the Rulebook.[3] *Shalomayev v. Altice USA, Inc.*, 2022 WL 2359406, at *6 (E.D.N.Y. June 30, 2022) (enforcing arbitration provision contained within general terms of service incorporated by reference into an electronically signed agreement). The Member Agreement states that access to and use of Kalshi's services are subject to the Member Agreement and the Rulebook, requires members to comply with the Rulebook, and expressly acknowledges "the obligation to submit to arbitration." Dkt. 64-2 §§ II, V.B, VII.A. Furthermore, the Notice Sentence directs users to "Kalshi's legal terms," not just the Member Agreement, and the "Legal stuff" menu

---

[3] Moreover, the Rulebook is not an ancillary document users may disregard. A DCM's rules are subject to CFTC approval, 7 U.S.C. § 7a-2(c), and the CEA requires each DCM to implement, monitor, and enforce those rules, Core Principle 2, 17 C.F.R. § 38.150.

lists the Rulebook by name alongside the Member Agreement. *See* Dkts. 72 ¶ 7, 72-3. Rule 11.3(d) is enforceable both as a provision of the Rulebook included among Kalshi's legal terms and as a provision expressly incorporated into the Member Agreement. *Thorne v. Square, Inc.* likewise enforced a multi-document chain where the interface communicated assent and each document incorporated the next. 2022 WL 542383, at *6-11 (E.D.N.Y. Feb. 23, 2022).

The repeated login notices reinforce that conclusion. Each Plaintiff encountered the login flow multiple times. *See* Dkt. 64 ¶¶ 21-22. Plaintiffs call those repetitions irrelevant because inadequate notice does not improve through repetition. But that premise assumes the conclusion. The notice here expressly tied continuing to agreement and provided immediate access to the documents. Repeated exposure therefore reinforces the objective notice created at registration, even though no single repetition is necessary to formation.

### C. Plaintiffs' Evidentiary Objections Do Not Create a Triable Dispute

Plaintiffs' evidentiary objections under Rules 56(c)(2) and 56(c)(4) (Opp. at 24-27) fail because the record must be considered as a whole. Sottile attests from personal knowledge that the relevant registration procedures were in force when Plaintiffs registered, states the notice language those procedures displayed, and explains how the notice linked to the User Agreements. Dkt. 64 ¶¶ 3, 8-14. More importantly, Plaintiffs supplied authenticated mobile images corroborating the features material to formation. Dkts. 72 ¶ 7, 72-2, 72-4. Plaintiffs' declarations do not create a genuine dispute. No Plaintiff asserts that the relevant mobile screen lacked the Notice Sentence; each attests only that he does not recall seeing it. *See supra* Section I.A. That failure of recollection does not contradict objective evidence of what the interface displayed, much less create a factual dispute requiring a trial.

Nor do *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993), *Dawson v. Target Corp.*, 2025 WL 1651940, at *2-3 (N.D. Cal. June 11, 2025), or *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010), preclude Kalshi from relying on

Plaintiffs' evidence. Kalshi is not advancing a new theory or introducing a new declaration containing evidence available when the motion was filed. It is answering Plaintiffs' assertion that the mobile interface differed materially by citing the evidence Plaintiffs submitted.

Because Plaintiffs identify no conflicting evidence about the Notice Sentence or the acts through which they created their accounts, no trial under 9 U.S.C. § 4 is warranted. Their lack of recollection does not create a dispute over the objective contents of the interface, and their own mobile evidence confirms those contents. *Segui*, 2026 WL 1724022, at *3, involved conflicting evidence as to whether the plaintiff executed any contract at all. No analogous execution dispute exists here.

## II. THE ARBITRATION CLAUSE COVERS PLAINTIFFS' CLAIMS

### A. Plaintiffs' Claims Fall Within Rule 11.3(d)'s Broad Text

Plaintiffs argue (Opp. at 32-33) that this dispute does not "arise out of" Kalshi's User Agreements and is therefore not subject to arbitration. But Rule 11.3(d) does not contain the narrow "arising out of" formulation Plaintiffs seek to import. It provides that "ANY ACTION" a Kalshi participant brings against a Kalshi Party "WILL BE RESOLVED BY BINDING ARBITRATION." Dkt. 64-1 at Rule 11.3(d). Each of Plaintiffs' claims challenges the creation, marketing, trading, outcome determination, or settlement of positions issued on the KalshiEX Platform under Kalshi's market rules. *See Risch* Compl. ¶¶ 61-98; *Golan* Compl. ¶¶ 68-116. They fall within Rule 11.3(d)'s text.

Plaintiffs' effort to relabel their claims as statutory does not sever them from the agreements governing their trades. Plaintiffs allege that Kalshi wrongfully invalidated or settled their positions by applying a "death carveout" inconsistent with the Khamenei Market's rules. But the Member Agreement provides access to the platform "as provided in the Kalshi Rulebook"; requires compliance with that Rulebook; and states that event contracts have rules governing, among other matters, "settlement, payout, [and] outcome determination." Dkt. 64-2 §§ II, III, V.B. Plaintiffs cannot litigate whether Kalshi improperly resolved their positions

without adjudicating the rules that created and governed those positions.

Plaintiffs' reliance (Opp. at 32-33) on *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 390-91 (2d Cir. 2007), and *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 122-23 (2d Cir. 2025), does not support a different result. Those cases interpreted narrow "arising out of" clauses—not the "any action" language at issue here—and involved claims that could be adjudicated without determining rights under the relevant agreement. *See Phillips*, 494 F.3d at 387-91; *see also Davitashvili*, 131 F.4th at 119-23. Neither circumstance is present here. Plaintiffs' claims directly challenge Kalshi's resolution of positions created, traded, and settled under the Rulebook; those claims cannot be adjudicated without reference to the contractual framework Plaintiffs say Kalshi misapplied. The Second Circuit has recognized that such broad language creates "a presumption that [a plaintiff's] claims are arbitrable." *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995). Where, as here, the clause sweeps in "any" action without exclusion, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted). Plaintiffs identify no evidence, much less "forceful evidence," that the parties intended to exclude statutory or consumer-protection claims.[4]

**B. Chapter 10 Does Not Make Rule 11.3(d)'s Arbitration Obligation Elective**

Plaintiffs construct an elaborate textual argument (Opp. at 28-29, 30-31) to treat Chapter 10 and Chapter 11 of the Rulebook as a single arbitration regime. But the provisions address different disputes. *First*, Chapter 10 applies only "[i]f so elected by a Participant" and only to "any Claim by the Participant against a Participant (including any related

---

[4] Plaintiffs also devote a separate section to who decides arbitrability (Opp. at 33-34), but Kalshi does not ask the Court to delegate the question of contract formation. The Court should decide formation, conclude that Plaintiffs agreed to Rule 11.3(d), and enforce the parties' broad agreement to arbitrate "ANY ACTION" against a Kalshi Party. To the extent the Court must also determine scope and Plaintiffs' challenges directed specifically to the arbitration clause, those arguments fail for the reasons set forth above and below. Plaintiffs' no-delegation argument identifies the decisionmaker; it supplies no substantive basis to deny arbitration.

counterclaims).” Dkt. 64-1 at Rule 10.1(a). Rule 11.3(d) addresses an action by a participant “against a Kalshi Party or against another Kalshi Member.” Dkt. 64-1 at Rule 11.3(d). Rule 11.3(d) states that such an action “WILL BE RESOLVED BY BINDING ARBITRATION.” Plaintiffs’ concession that Kalshi is not a “Participant” for purposes of Chapter 10 confirms the distinction. *See* Opp. at 28.

*Second*, Rule 11.3(d)’s reference to arbitration “in accordance with the rules of this chapter” does not incorporate Chapter 10. The “rules of this chapter” include Chapter 11’s limitations period and governing-law provision. Rule 11.3(d)’s additional reference to “other rules of Kalshi, if applicable” permits compatible procedural provisions without importing Chapter 10’s threshold limitation to claims between participants. Section XX of the Member Agreement does not change that reading. *See* Dkt. 64-2 § XX. Its general direction that disputes will be settled under “the procedures set forth in the Kalshi Rulebook” does not override the Rulebook’s specific allocation of different disputes. *Id.* The specific provision governing this dispute controls over Section XX’s general cross-reference.

Plaintiffs’ fallback—that Rule 11.3(d) fails because Chapter 11 “contains no arbitration rules,” “[n]o procedures, no method of selecting an arbitrator, no seat, no timeline, nothing” (Opp. at 31)—also fails. Rule 11.3(d) specifies the essential undertaking: disputes within its scope “WILL BE RESOLVED BY BINDING ARBITRATION.” The omission of a named provider, seat, or administrator does not invalidate that agreement. The FAA supplies a mechanism for appointing an arbitrator when no method is specified. *See WeWork Cos. v. Zoumer*, 2016 WL 1337280, at *5 (S.D.N.Y. Apr. 5, 2016); *Badinelli v. Tuxedo Club*, 183 F. Supp. 3d 450, 453-55 (S.D.N.Y. 2016). Plaintiffs invoke *In re Salomon Inc. Shareholders’ Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995), and *Moss v. First Premier Bank*, 835 F.3d 260 (2d Cir. 2016), for the proposition that a court cannot “construct the forum Kalshi never built.” Opp. at 31. But those cases involved agreements designating a particular institution as

the exclusive arbitral forum, followed by that institution's unavailability. *See Salomon*, 68 F.3d at 558-61; *Moss*, 835 F.3d at 265-66. Rule 11.3(d) designates no exclusive provider whose availability was integral to the parties' bargain. Applying FAA § 5 therefore fills an open procedural term; it does not override a failed forum designation.

### C. Federal Commodities Law Does Not Prohibit the Parties' Arbitration Agreement

Plaintiffs contend that "[f]ederal law has made exchange arbitration voluntary for the customer for fifty years" (Opp. at 3). That argument conflates a DCM's regulatory obligation to provide voluntary customer dispute-resolution procedures with the enforceability of a customer's separate contractual agreement to arbitrate claims against the exchange. Core Principle 14 requires a DCM to establish rules and facilities for alternative dispute resolution. 17 C.F.R. § 38.750. The voluntariness language Plaintiffs quote appears in nonexclusive acceptable practices guidance concerning the exchange-provided customer mechanism addressed in Chapter 10; it does not state that a participant may never enter a pre-dispute arbitration agreement with the exchange. Plaintiffs cite no decision invalidating under the FAA a DCM participant's separate agreement to arbitrate claims against the exchange. Chapter 10's elective participant-dispute mechanism and Rule 11.3(d)'s contractual undertaking address different relationships and coexist without conflict.

Plaintiffs' reliance on *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353 (1982), and *Leist v. Simplot*, 638 F.2d 283 (2d Cir. 1980), fares no better. Those decisions addressed statutory exchange procedures; neither considered a separate agreement requiring arbitration of claims against a DCM under the FAA. Plaintiffs' quotations describing the statutory mechanism as voluntary thus do not answer the contractual question presented here.

## III. PLAINTIFFS' REMAINING ENFORCEABILITY OBJECTIONS FAIL

### A. Plaintiffs Attack a Chapter 10 Forum That Does Not Govern Actions Against Kalshi

In their opposition, Plaintiffs argue that Kalshi's dispute-resolution scheme is

"arbitration in name only" and unconscionable because Chapter 10 of the Rulebook provides for a Kalshi-convened panel, fees payable to Kalshi, and a Regulatory Oversight Committee backstop. *See* Opp. at 34-37. The argument fails at its premise. Chapter 10 governs elective claims between participants, not actions against Kalshi. *See supra* Section II.B. Yet every supposedly disqualifying feature Plaintiffs identify—Kalshi's role in convening a panel, the filing fee payable to Kalshi, and the Regulatory Oversight Committee—comes from Chapter 10. Plaintiffs cannot deny Chapter 10's applicability and simultaneously import its tribunal into a different arbitration obligation.

Nothing in Rule 11.3(d) designates Kalshi or its committee as the adjudicator of actions against Kalshi. Rule 11.3(d) states that those actions will be resolved by binding arbitration, in accordance with Chapter 11 and any other Kalshi rules "if applicable." Plaintiffs' contention that Kalshi itself would adjudicate the dispute depends entirely on importing Chapter 10's panel provisions into a category of dispute that Chapter 10 does not cover. If those provisions are inapplicable to an action against Kalshi, FAA § 5 supplies a neutral arbitrator. *Flores v. New York Football Giants, Inc.*, 150 F.4th 172, 181-86 (2d Cir. 2025), therefore does not establish that the agreed proceeding falls outside the FAA. It precludes enforcement of an exclusive, structurally dependent decisionmaker; it does not require litigation where an agreement mandates binding arbitration without selecting that decisionmaker.

Plaintiffs also cannot establish procedural unconscionability. Before registration, the interface disclosed that continuing constituted agreement to "legal terms," the Member Agreement and Rulebook were accessible from that same screen, and the Member Agreement expressly identified "the obligation to submit to arbitration." Dkt. 64-2 § VII.A. A standardized consumer agreement may reflect unequal bargaining power, but that circumstance alone does not render its terms procedurally unconscionable. Nor can Plaintiffs establish substantive unconscionability by attributing Chapter 10's participant-dispute procedures to Rule 11.3(d).

Rule 11.3(d) neither selects a Kalshi-controlled tribunal nor requires application of an interested forum. Any concern about an unspecified method of selecting the arbitrator is addressed by FAA § 5, not by invalidating the parties' agreement to arbitrate.

### B. Kalshi's Notice-Based Amendment Authority Does Not Render the Agreement Illusory

Plaintiffs' final challenge to Rule 11.3(d) is that Kalshi's unilateral amendment power renders the arbitration promise illusory. *See* Opp. at 37. But Section VII(E) does not give Kalshi unlimited, retroactive authority. The amendment power requires advance notice and permits the member to terminate before an amendment's effective date. *See* Dkt. 64-2 § VII(E). Kalshi's amendment authority is also constrained by the implied covenant of good faith and fair dealing (*see Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 106 (E.D.N.Y. 2015)), and termination does not eliminate liability accrued before termination. *See* Dkt. 64-2 § XIII. Those restrictions distinguish an unlimited power to rewrite obligations after performance or after a dispute arises. *See Lebowitz v. Dow Jones & Co.*, 508 F. App'x 83, 84-85 (2d Cir. 2013); *Bassett*, 93 F. Supp. 3d at 106-08.

*Peleg v. Neiman Marcus Group, Inc.*, 204 Cal. App. 4th 1425 (2012), and *Flores v. NFL*, 658 F. Supp. 3d 198 (S.D.N.Y. 2023), are therefore inapposite. *See* Opp. at 37. *Peleg* involved retroactive unilateral modification, while Section VII(E) requires notice and permits termination beforehand. *Compare Peleg*, 204 Cal. App. 4th at 1465, *with* Dkt. 64-2 § VII(E). *Flores* likewise did not involve this notice-and-termination structure. *See* 658 F. Supp. 3d at 214-15. Plaintiffs also rely on *Marciano v. DCH Auto Group*, 14 F. Supp. 3d 322 (S.D.N.Y. 2014), and *Bassett*, 93 F. Supp. 3d 95 (Opp. at 37), but neither supports their position. *Marciano* found that a modification clause that "expressly exclude[d] the [a]rbitration [a]greement" was dispositive on those facts; it did not hold that express exclusion is the only means of avoiding illusoriness. 14 F. Supp. 3d at 335-37 (emphasis in original). And *Bassett* held that a unilateral amendment power does not automatically invalidate an arbitration agreement because the

discretionary power carries an implied duty of good faith. 93 F. Supp. 3d at 106. Section VII(E)'s notice requirement, future effective date, termination right, and implied good-faith limitation are sufficient to defeat Plaintiffs' illusoriness theory.

## IV. EQUITABLE ESTOPPEL REQUIRES ARBITRATION OF CLAIMS AGAINST ALL DEFENDANTS

### A. Plaintiffs' Direct-Scope Arguments Do Not Defeat Equitable Estoppel

Plaintiffs conflate two questions: whether the non-signatories fall within Rule 11.3(d)'s *direct* scope and whether equitable estoppel allows them to *invoke* it. Even if the related Defendants do not fall within Rule 11.3(a)'s definition of "Kalshi Parties," that would not resolve whether they may enforce the arbitration agreement through equitable estoppel. That doctrine asks whether Plaintiffs' claims against the non-signatories are intertwined with the User Agreements and whether the relationships among the parties warrant arbitration. *See Ragone v. Atl. Video*, 595 F.3d 115, 127 (2d Cir. 2010); *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406-07 (2d Cir. 2001).

### B. Plaintiffs' Own Allegations Establish the Required Interdependence

Both complaints treat Defendants as a single enterprise that operated, marketed, and settled the Khamenei Market, and assert the same causes of action against each without differentiation. *Risch* Compl. ¶¶ 1-2, 61-98; *Golan* Compl. ¶¶ 1, 68-116. In *Shepherd v. Belkin International, Inc.*, 683 F. Supp. 3d 282, 288-89 (E.D.N.Y. 2023), the court compelled arbitration against a non-signatory where the complaint "does not distinguish in any way between" the signatory and non-signatory defendants and asserts identical claims against both.

Plaintiffs rely on *Doe v. Trump Corp.*, 453 F. Supp. 3d 634 (S.D.N.Y. 2020), *aff'd*, 6 F.4th 400 (2d Cir. 2021), but that case is materially different. There, the Second Circuit denied estoppel because "there was no corporate relationship between the defendants and ACN of which the plaintiffs had knowledge." 6 F.4th at 413-14. The defendants were outside promoters whose alleged independence from the signatory was central to the asserted fraud. *Id.* at 414.

Here, Plaintiffs allege coordinated conduct by related Kalshi entities. The claims against the non-signatory Defendants are not independent of the contractual relationship with KalshiEX; they are the same claims arising from the same trades and settlement decision. *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209 (2009), is likewise distinguishable. There, the non-signatories were outside accountants and lawyers with no corporate relationship to the signatory, and the court denied estoppel because the arbitration agreements were "merely a procedural and collateral step" in a fraud scheme. *Id.* at 218, 229-30. Here, the User Agreements are not a collateral step in an independently actionable scheme. They govern the platform, positions, rules, and settlement decision that form the basis of Plaintiffs' alleged injury. *See Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276, 279-82 (2d Cir. 2003).

### C. The DCO Rulebook's Venue Provision Does Not Preclude Arbitration

Plaintiffs argue that Kalshi Klear's DCO Rulebook Rule 13.5, requiring actions "against the Company" to be brought in New York courts, independently defeats arbitration for the clearinghouse defendants. Opp. at 40. The argument fails because the DCO Rulebook governs Kalshi Klear's clearing operations, and Rule 13.5 must be read within that scope. Rule 13.5 governs disputes arising from Kalshi Klear's *clearing operations*: it applies to actions against the clearing organization in its capacity as a derivatives clearing organization. *See* Dkt. 72-1 at 1. Plaintiffs do not plead a differentiated claim based on a particular clearing operation. They instead allege that all Defendants, including the Klear entities, collectively operated, marketed, and settled the Khamenei Market, and assert the same causes of action against each Defendant without distinction. *See Golan* Compl. ¶¶ 1, 68-116; *Risch* Compl. ¶¶ 1-3, 61-98.

Those collective allegations reinforce—rather than defeat—equitable estoppel. Plaintiffs' claims against the Klear entities arise from the same positions and settlement decision challenged against KalshiEX and are intertwined with the KalshiEX User Agreements governing the positions Plaintiffs purchased. Plaintiffs cannot rely on a single alleged course

of conduct to impose joint liability on all Defendants while invoking a separate rulebook to isolate the Klear entities from the arbitration obligation governing that same conduct.

Even if Rule 13.5 reaches some aspect of Plaintiffs' claims, it should be harmonized with, rather than read to displace, Rule 11.3(d). Rule 13.5 does not mention arbitration, state that judicial resolution is exclusive, or purport to supersede the KalshiEX Rulebook's arbitration provision. It identifies the New York courts in which an action against Kalshi Klear "shall be brought," requires consent to jurisdiction and venue, and waives a jury trial. *See* Dkt. 72-1, Rule 13.5.A. Those provisions can govern judicial proceedings connected with an arbitration, including proceedings to compel arbitration or confirm, enforce, or vacate an award.

The Second Circuit has recognized that a forum clause may operate "complementary to" an arbitration agreement by fixing jurisdiction and venue for arbitration-related court proceedings. *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 285 (2d Cir. 2005). The Second Circuit has distinguished *Bank Julius* where a later agreement contained an all-inclusive, mandatory court-selection clause and a merger provision superseding the prior arbitration arrangement. *See Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 215-16 (2d Cir. 2014); *Res. Grp. Int'l Ltd. v. Chishti*, 91 F.4th 107, 114-15 (2d Cir. 2024). No comparable supersession occurred here. Rule 13.5 appears in a separate rulebook governing clearing activities; contains no merger or supersession language; and does not state that it overrides Rule 11.3(d) for claims arising from the exchange relationship. Reading Rule 13.5 to govern necessary judicial proceedings gives effect to both provisions.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Defendants' Motion, Defendants respectfully request that the Court compel Plaintiffs to arbitrate their claims.

Dated: August 26, 2026
New York, New York

Respectfully submitted,

*/s/ Tawfiq S. Rangwala*
Tawfiq S. Rangwala
Katherine Kelly Fell
Matthew J. Laroche
Andrew L. Porter
Sean M. Murphy
Ashley A. Satterlee
MILBANK LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
trangwala@milbank.com
kfell@milbank.com
mlaroche@milbank.com
aporter@milbank.com
smurphy@milbank.com
asatterlee@milbank.com

Joshua B. Sterling (*pro hac vice*)
MILBANK LLP
1101 New York Avenue NW
Washington, D.C. 20005
Telephone: (202) 835-7500
Facsimile: (202) 263-7586
jsterling@milbank.com

*Counsel for Defendants KalshiEX LLC, Kalshi Inc., Kalshi Klear LLC, Kalshi Klear Inc., and Kalshi Trading LLC*